```
                IN THE UNITED STATES DISTRICT COURT

                     FOR THE DISTRICT OF OREGON


KEVIN HICKS,                       )
                                   )
              Plaintiff,           )   Civil No. 09-6185-HO
                                   )
                                   )
         v.                        )   ORDER
                                   )
HSINTERNATIONAL SPORTS MANAGEMENT, )
INC., a California corporation; and)
EMANUEL HUDSON, an individual,     )
                                   )
              Defendants.          )
_____)
```

Defendants HSInternational Sports Management, Inc. (HSI) and Emanuel Hudson seek to abate plaintiff Kevin Hicks's claims against them and compel arbitration in Orange County, California pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 3.[1]

---

[1] Defendants also seek, in the alternative, to dismiss plaintiff's claims against them for lack of personal jurisdiction or to transfer the litigation to the Central District of California, Southern Division. This part of the motion has been set over so that plaintiff can conduct discovery on personal jurisdiction, if necessary, after the court rules on the motion to compel arbitration.

ALLEGATIONS

Plaintiff alleges that defendant Hudson approached him following a collegiate track race in the Spring of 2005 in Florida regarding representation. Later that Spring, Hudson convinced plaintiff to give up his remaining eligibility as a student athlete and enter into a contract for professional representation with defendant HSI, a California corporation.

On July 28, 2005, in Florida, plaintiff signed an "Attorney-Client Fee and Management Agreement" with HSI for HSI to act as his sports agent. Plaintiff agreed to pay HSI 15 percent of the money he received in appearance fees, bonuses, and prize money in exchange for HSI's best efforts to negotiate his contracts and manage his racing career. The agreement also provided that plaintiff could discharge HSI as his agent at any time. HSI did not file an athlete agent disclosure statement in California.

Neither Hudson nor HSI had an athlete agent license in the State of Florida at the time that Hudson negotiated and HSI later entered into an agreement with plaintiff. Nor did Hudson or HSI have an athlete agent license in the State of Oregon at the times of negotiation and agreement.

Plaintiff entered into a four and half year track and field contract with Nike beginning July 1, 2005, under which plaintiff was to receive a base salary of $50,000 for 2005 and $100,000 each year for 2006-2009 along with other bonuses and allowances. The Nike

contract also provided for reductions in base salary if plaintiff failed to participate in a sufficient number of sanctioned track events or if plaintiff to failed attain certain results.

Defendants neglected to enter plaintiff in the events necessary to meet the Nike contract standards. Accordingly, Nike reduced plaintiff's base salary in 2007.

In February of 2008, plaintiff informed defendants that they were no longer authorized to endorse checks on his behalf. In March of 2008, plaintiff terminated the management agreement with HSI in writing. However, defendant retained and cashed a $12,000 payment from Nike to plaintiff for the second quarter of 2008.

Plaintiff claims that defendants violated California law by failing to make appropriate filings and by failing to make required disclosures in the management agreement. Accordingly, plaintiff asserts he is entitled to a refund of all money paid to defendants under the management agreement and actual damages.

Plaintiff also claims that defendants similarly failed to provide required disclosures under Florida law, if applicable, and violated Florida law by failing to obtain an athlete agent's license prior to conducting business in Florida.

Plaintiff seeks a declaration that the management agreement is void and unenforceable under California, Florida or Oregon law. Accordingly, plaintiff claims he owes no commissions on his current endorsement contracts.

For his fourth and fifth claims, plaintiff alleges conversion and money had and received based on the retention of $12,000 from Nike.

For his sixth claim, plaintiff alleges promissory estoppel based on the failure to enter plaintiff into events necessary to achieve the standards set forth in his Nike contract.

For his seventh claim, plaintiff alleges that even though the management agreement is void and unenforceable, defendants breached their fiduciary duty as plaintiff's sports agent.

## DISCUSSION

The agreement at issue provided, in part:

> **Dispute Resolution**: If ATTORNEY/AGENT and CLIENT are unable to reach an agreement regarding a dispute between them arising out of this retention, the dispute shall be subject to binding arbitration to be held in Orange County, California before a retired California Superior Court judge. Judgment on the arbitrator's award shall be final and binding and may be entered in any competent court.

Plaintiff seeks to avoid this provision contending that his claims arise out of Defendants' conduct which resulted in harm to plaintiff in violation of tort law and state statute.

Plaintiff contends that his claims do not relate to interpretation or enforcement of the agreement. While this may be partially true, the claims do, however, depend on the absence of the

agreement to be successful.[2] If the agreement is not void, then defendants may, for instance, continue to receive commissions after the conclusion of services pursuant to any employment contract entered into during the term of the agreement, e.g., the Nike contract. Because some of plaintiff's claims depend on an interpretation of the contractual relationship, i.e., that it does not exist under the management agreement, the claims are arbitrable. Moreover, the arbitration provision is not limited to disputes arising out of the agreement, but rather is considerably broader in that it relates to disputes arising out of the retention which resulted in the agreement. Although retention is not defined in the agreement, Congress' intent requires this court to liberally interpret the clause in favor of arbitration.

Federal substantive law governs the question of arbitrability. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 240 (1983). The FAA reflects Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause. See Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991) (citing Perry v. Thomas, 482 U.S. 483, 490 (1987)). The FAA embodies a clear federal policy in favor of arbitration. See 9 U.S.C. § 2 "[A]ny doubts concerning the scope

---

[2]In addition, success of the breach of fiduciary duty claim requires demonstration of duties imposed as a result of entering into the agreement.

of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone, 460 U.S. at 24-25.

The standard for demonstrating arbitrability is not high. The FAA leaves no place for the exercise of discretion by a district court, but instead requires that a district court direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed. See Dean Witter Reynolds v. Byrd, 470 U.S. 213, 218 (1985). A district court can determine only whether a written arbitration agreement exists, and if it does, enforce it in accordance with its terms. See Howard Elec. & Mech. v. Briscoe Co., 754 F.2d 847, 849 (9th Cir. 1985).

A court, in construing a valid arbitration agreement within the coverage of the FAA, applies ordinary principles of state contract law to determine whether the parties have agreed to arbitrate a particular dispute. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Plaintiff primarily relies on Tracer Research Corp v. National Environmental Services Co., 42 F.3d 1292 (9th Cir. 1994) and Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458 (9th Cir. 1983) to apply a narrow reading to the arbitration clause in this case. These cases represent a distinct minority analysis given the less than liberal interpretation of arbitrability espoused, but they are controlling for this court. Nonetheless, even under these

cases, the court must construe the agreement in favor of arbitrability over plaintiff's claims in this case.

Since Mediterranean Enterprises, the Ninth Circuit has generally found that arbitration clauses such as "arising under" an agreement or "arising out of" as opposed to arising "in connection with" or "related to" are interpreted more narrowly to involve an agreement to arbitrate only claims relating to interpretation and performance of the contract itself and not collateral to the contract. See, e.g., Mediterranean Enterprises, Inc., 42 F.3d at 1464.

The court must determine whether the parties intended their arbitration agreement to include the plaintiff's claims by examining the text and context of the provision. Yogman v. Parrott, 325 Or. 358 (1997). If the provision proves to be unambiguous, then the analysis is complete. Id. "In the absence of an ambiguity, the court construes the words of a contract as a matter of law." Eagle Industries, Inc. v. Thompson, 321 Or. 398, 405 (1995). If an examination of the text and context reveals an ambiguity, then any doubts concerning the scope of arbitrable issues is resolved in favor of arbitration. Moses H. Cone, 460 U.S. at 24-25.

Although the arbitration clause in this case uses the language "arising out of" as opposed to "related to," there is a significant difference between the clause here and the clauses narrowly interpreted by the Ninth Circuit. Rather than agreeing to arbitrate disputes arising out of the management agreement, the parties agreed

7 - ORDER

to arbitrate disputes arising out of the "retention." This, at a minimum, reasonably refers to not only disputes involving interpretation and performance of the agreement, but also disputes regarding the hiring process, disclosures, and other matters related to the contract. If the parties intended to limit arbitration only to those claims involving interpretation and performance of the contract itself and not collateral to the contract, they would have limited arbitration to disputes arising under the agreement rather than the retention.

Because the parties agreed to arbitrate matters more broadly than just those arising out interpretation and performance of the agreement itself, the factual allegations raised in the complaint need only touch matters covered by the contract. These matters include issues regarding the formation of the contract and any violations of law in connection therewith. Cf. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (agreement to arbitrate disputes arising in connection with agreement suggest a broader scope than disputes concerning the contract itself).

Plaintiff's first and second claims assert that defendants violated state law prerequisites by failing to make a required disclosure in the agreement itself. Even under a narrow interpretation of the agreement, this claim is subject to arbitration because it relates to the agreement itself. At a minimum, it relates

8 - ORDER

to the retention because it involves violations of required disclosures regarding retention of agents.

Plaintiff's third claim seeks a declaration that the agreement itself is void and such claim involves a dispute arising out of the retention of defendants as plaintiff's agent.

Plaintiff's conversion and money had and received claims touch matters covered by the contract because they necessarily involve interpretation of whether defendants had a right under section 8(B) of the agreement to receive commissions after the conclusion of services, so long as plaintiff continues to receive consideration pursuant to agreements entered into during the term of the agreement.

Plaintiff's promissory estoppel and breach of fiduciary duty claims also touch matters covered by the contract because they refer to duties arising from the retention if not the agreement itself.

Because all of plaintiff's claims fall within the agreement to arbitrate, the court must grant the motion to abate and compel arbitration. This is true even though plaintiff seeks a declaration that the agreement is void. Plaintiff does not argue that the arbitration clause by itself is void or unconscionable, but rather that the whole agreement is void. Such claims must be determined by an arbitrator and not the court. Prima Paint Corp. v. Flood and Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967) (attacks on the validity of an entire contract, as distinct from attacks on the arbitration clause, are for the arbitrator); Buckeye Check Cashing,

<u>Inc. v. Cardegna</u>, 546 U.S. 440, 443, 446 (2006) (claim that contract is void *ab initio* under state law is within the province of the arbitrator).

## CONCLUSION

For the reasons stated above, defendants' motion to abate and compel arbitration in Orange County, California (#3) is granted and the alternative motions to dismiss for lack of personal jurisdiction or to change venue are denied as moot.

DATED this   27th    day of October, 2009.

                                          s/ Michael R. Hogan    
                                    United States District Judge